UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACCELER-RAY, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IPG PHOTONICS CORPORATION,<br><br>　　　　Defendant. | Case No. 5:16-cv-02352-HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

In this diversity action, plaintiff Acceler-Ray, Inc. (Acceler-Ray) sues for alleged breach of contract, fraud, and unfair business practices arising out of Acceler-Ray's purchase of lasers from defendant IPG Photonics Corp. (IPG). IPG moves to dismiss the complaint, arguing that a forum selection clause requires this suit to be litigated in Massachusetts. Alternatively, IPG moves for an order transferring this case there pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, this court grants the motion.[1]

## BACKGROUND

Acceler-Ray is a California precision machine laser shop. IPG manufactures and markets lasers. IPG is headquartered in Massachusetts, but it also has two smaller facilities here.

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

In 2010, plaintiff was looking to purchase additional and upgraded lasers. Acceler-Ray says that it was contacted by one Tom Babcock, who was at that time an IPG sales manager based in California.[2] Plaintiff was interested in purchasing lasers with a pulse shaping feature. However, IPG's lasers with pulse shaping were not yet in production and were not anticipated to be ready until sometime in 2011. As will be discussed more fully below, the parties dispute whether IPG's Terms and Conditions (T&Cs) containing the forum selection clause were part of their contract. But, for present purposes, there appears to be no dispute as to the general parameters of the agreement re Acceler-Ray's purchase. In sum, Acceler-Ray wanted to buy lasers before the end of 2010 in order to be able to take a tax write-off, and IPG wanted to record a sale on its books for the 2010 calendar year. So, according to the complaint, plaintiff agreed to purchase three lasers that it didn't actually want, with the understanding that two of those lasers would be returned to IPG unused and unopened, and IPG would then send Acceler-Ray new lasers with pulse shaping sometime around March or April 2011.

The lasers were purchased and delivered. Acceler-Ray says that the first one didn't work properly. As for the two "placeholder" lasers, plaintiff says that they were delivered months after the (allegedly promised) March/April 2011 timeframe. Plus, Acceler-Ray says that the replacement lasers were supposed to be two brand new ones with pulse shaping. Instead, plaintiff says IPG sent old, retrofitted lasers that did not function as specified or promised.

In an attempt to resolve the parties' ongoing issues, plaintiff says that in October 2013 an IPG salesperson offered to provide Acceler-Ray with four new pulse shaping lasers, and Acceler-Ray accepted. However, plaintiff says that IPG subsequently advised in July 2014 that "current management disagree[d]" with that arrangement. (Dkt. 1-1, Complaint ¶ 39).

This lawsuit followed. Acceler-Ray filed its complaint in California state court, asserting breach of contract and other contract-based claims. Plaintiff also asserts fraud-based claims, alleging that IPG never actually intended to provide the lasers Acceler-Ray wanted and instead made a "bait-and-switch" by trying to foist old retrofitted, nonworking lasers on plaintiff.

---

[2] Babcock no longer works for IPG.

2

IPG removed the matter here, invoking diversity jurisdiction, 28 U.S.C. § 1332. It moves to dismiss the complaint, arguing that Acceler-Ray assented to its T&Cs that contain a forum selection clause requiring this suit to be litigated in Massachusetts state court. The pertinent language states:

> The validity, interpretation and performance of this Agreement shall be governed by the laws of Massachusetts, as if performed wholly within the state and without giving effect to the principles of conflict of laws. The parties specifically disclaim the application of the United Nations Convention on Contracts for the International Sale of Goods [CSIG]. IPG and Buyer hereby irrevocably and unconditionally submit to the courts of the Commonwealth of Massachusetts and all courts competent to hear appeals therefrom.

(Dkt. 17-1, Kelly Decl., Ex. A).[3] Alternatively, IPG moves for an order transferring this case to Massachusetts pursuant to 28 U.S.C. § 1404(a). Acceler-Ray contends that IPG's T&Cs were never part of the parties' deal and that it would be unreasonable, in any event, to require that this litigation proceed in Massachusetts. For the reasons to be discussed, this court grants the motion.

**DISCUSSION**

**A.     Whether IPG's T&Cs were part of the parties' contract**

There is no dispute that forum selection clauses are evaluated under federal law. However, as a threshold matter, Acceler-Ray disputes that IPG's T&Cs containing the Massachusetts forum selection clause were ever part of the parties' contract. As to the matter of contract formation, plaintiff argues that state (California) law applies. IPG does not exactly dispute that assertion, although it argues that the cases on which Acceler-Ray chiefly relies are inapposite. In any event, there is no dispute that the essential elements of contract formation are offer, acceptance, and consideration. Here, the parties disagree whether Acceler-Ray accepted IPG's T&Cs (and, hence the forum selection clause) as part of the laser purchase. Acceler-Ray says it never negotiated the T&Cs, much less accepted them. IPG says that the T&Cs were included in all quotations sent to Acceler-Ray over the course of the parties' negotiations; and, it contends that Acceler-Ray assented to the T&Cs by issuing purchase orders and paying for the lasers without ever objecting

---

[3] Forum selection clauses referring to courts "of" a particular state refer to the state, not federal, courts located there. Doe 1 v. AOL, LLC, 552 F.3d 1077, 1079 (9th Cir. 2009).

1  to the T&Cs.

2      The record indicates that the parties' reached their laser purchasing agreement through oral
3  discussions and emails, primarily between IPG salesperson Babcock and Acceler-Ray's President,
4  George Ludwig. The key events and documents[4] are as follows:

5      On November 11, 2010, November 18, 2010, and November 19, 2010, IPG sent Acceler-
6  Ray Formal Quotations---the first was for 2 lasers; the second and third were for one laser of that
7  same model, plus a collimator. All three quotes appended IPG's T&Cs, including the
8  Massachusetts forum selection clause, as well as a number of other sales-related documents (a
9  credit form; a warranty sheet; and licensing agreements). All three quotes provided for a 1-year
10 warranty. (Dkt. 17-1, Declaration of Jillian Kelly (Kelly Decl.) ¶¶ 2-4, Exs. A-C, E; Dkt. 16-2,
11 Declaration of George Ludwig (Ludwig Decl.) ¶ 4, Ex. C).

12     On November 19, 2010, Ludwig emailed Babcock stating that Acceler-Ray "need[s] a
13 coupler, the on board modulation and two years of software upgrades," as well as a 2-year
14 warranty. (Ludwig Decl. ¶ 5, Ex. D). Babcock replied that he was waiting to hear from his boss
15 "on our ability to commit to the up-grad of on-board modulation," as well as the coupler. (*Id.*).

16     Subsequently, on November 23, 2010, Babcock sent an email to Ludwig re "QCW deal,"
17 stating:

> Here's the deal, just to make sure there is no confusion.
>
> 1-You provide a check for a single unit of the YLP-15-1500-QCW-AC and
> we can ship tomorrow, Wednesday Nov 24.
>
>     a. $40,000 for the laser
>     b. $1944 less 10% OEM for $1749.60
>     c. $3861.84 Tax
>     d. $46561.44 Total
>     e. Shipping by your UPS-ground account number W56-811
>     f. PO Number 3982
>
> 2-Assuming you are happy with the laser you will provide a second check
> for 2 more units that we will delivery [sic] in December.

---

[4] The court has considered the exhibits submitted by both sides. To the extent plaintiff objects to the exhibits appended to the Declaration of Bill Shiner, those objections are overruled. Any objections to the parties' or declarants' characterization of the exhibits are deemed moot, as the court finds it unnecessary to rely on the parties' characterization of those documents.

> 3-We will take the 2 lasers back in January, unopened/unused, and replace them with 2 units including on-board pulse shaping
>
>     a. Delivery uncertain, March/April timeframe
>
> 4-Don't know why your quote doesn't spec 2 year Warranty, I'll get that in writing to you.

(Ludwig Decl. ¶ 7, Ex. E).

The next day, November 24, 2010, IPG sent Acceler-Ray a "Formal Quotation" for 1 YLR-150-1500-QCW-AC laser and 1 collimator. Appended to the quote are the same T&Cs and other sales-related documents that were attached to IPG's prior quotes. This time, however, the quote provided a 2-year warranty. (Kelly Decl. ¶ 2, Ex. D). That same day, Acceler-Ray issued a purchase order for the laser and collimator. IPG issued an invoice (which noted that the sale/delivery of the goods were subject to the T&Cs) and related sales documents, and Acceler-Ray prepaid for the laser by check dated November 23, 2010. (Dkt. 8-5, Declaration of Bill Shiner (Shiner Decl.), ¶ 13, Ex. C).

On December 3, 2010, IPG sent an email to Acceler-Ray re "Sales Order Acknowledgement for PO #3982 from IPG Photonics." Appended to the email were a sales order acknowledgement, along with the T&Cs and other warranty and licensing documents that were appended to IPG's prior quotes. The email states: "Please note this order has already shipped; this is not a new order." (Ludwig Decl., ¶ 9, Ex. F).

On December 20, 2010, Ludwig emailed Babcock re "Next two lasers," and asked: "Are we still doing the next two lasers? Or is that a dead deal?" (Ludwig Decl., ¶ 10, Ex. G). Babcock replied by email that same day:

> …. To your point on Friday, yea, holding to [sic] lasers for you went out the window when one of the other guys brought in a PO for a volume on a totally clean deal. I wasn't consulted, it was just done.
>
> I can't you [sic] any kind of escrow, so if you want the laser we have in stock (or 2 if I can get you a second one) we can proceed as previously discussed. We'll deliver the laser this year, you leave it in the box and send it back for 'upgrade' in the new year, and we'll ship a laser with on-board pulse shaping as soon as they are available (March/April estimated).

(Ludwig Decl. ¶ 10, Ex. G).

The next day, December 21, 2010, Acceler-Ray issued two purchase orders for two additional lasers. IPG issued invoices (again noting that sale and delivery were subject to the T&Cs) and related sales documents, with 2-year warranties. The documents indicate that Acceler-Ray prepaid for the two lasers. (Dkt. 8-7, Shiner Decl. ¶ 15, Exs. D & E).

IPG argues that the November 24 quotation is the offer for sale, which plaintiff accepted through subsequent purchase orders for the three lasers. (Defendant disputes that the parties' contract could be characterized as an oral one, inasmuch this concerned plaintiff's purchase of goods over $500.) Because plaintiff never objected to the T&Cs, IPG contends that Acceler-Ray cannot now object to the forum selection clause contained in those T&Cs.

Pointing out that the November 24 quote references only the first laser, Acceler-Ray says that this was not an ordinary transaction where one party may be held to have assented to terms if it does not object to them. Rather, plaintiff maintains that the parties' contract was an oral one, manifested solely by Babcock's November 23, 2010 email, which referenced three lasers, but did not mention or append defendant's T&Cs. In Acceler-Ray's view, all of the quotes are extraneous and unrelated to the actual agreement. And, citing *C9 Ventures v. SVC-West, L.P.*, 136 Cal. Rptr.3d 550 (Cal. Ct. App. 2012) and *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, 328 F.3d 528 (9th Cir. 2003), Acceler-Ray argues that the T&Cs it received with IPG's December 3 confirmation of sale email were additional, after-the-fact terms that cannot be part of the parties' contract. In those cases, the courts concluded that the disputed terms (i.e., an indemnification clause and a forum selection clause) were not part of the parties' contract because the terms were included on invoices presented only after the parties formed an oral agreement. *C9 Ventures*, 136 Cal. Rptr.3d at 558; *Chateau des Charmes Wines*, 328 F.3d at 531.

The situation here is not as straightforward as *C9 Ventures* or *Chateau des Charmes Wines*. The record shows that IPG provided its T&Cs to plaintiff a number of times during the parties' negotiations, suggesting that those T&Cs were always intended to be part of any deal to which IPG would agree. Although plaintiff protests that those quotes did not concern the lasers it actually wanted, those quotes cannot be divorced from the parties' agreement. Nor can the contract be limited solely to the November 23 email. The course of events demonstrate that the

6

parties struck the deal that they did so that plaintiff could (eventually) get the lasers it wanted *and* so that plaintiff could take a tax write-off and defendant could record a sale for 2010. IPG's quotes with the T&Cs, including the forum selection clause, reflect how defendant was willing to implement that agreement. The T&Cs were sent to plaintiff over the course of the parties' negotiations, and Acceler-Ray acquiesced by proceeding with the purchase of lasers it didn't actually want. Accordingly, the parties entered into a valid contract containing a forum selection clause. *See, e.g., LP Digital Solutions v. Signifi Solutions, Inc.*, 921 F. Supp.2d 997, 1007-08 (C.D. Cal. 2013) (concluding that a forum selection clause on defendant's invoice was part of the parties' contract, even though plaintiff never signed the invoice, because the invoice was sent to plaintiff prior to the sale, plaintiff had a duty to read the invoice's terms and conditions, and plaintiff acquiesced to the terms and conditions by proceeding with the transaction).

### B. Whether the forum selection clause should be enforced

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *The Bremen v. Zapata Off- Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). There are three reasons that would make enforcement of a forum selection clause unreasonable: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)). The party challenging the clause bears a heavy burden of proof. *Id.* (citing *The Bremen*, 407 U.S. at 15, 92 S. Ct. 1907).

#### 1. *Forum Non Conveniens* Analysis

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Construction Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas*, 134 S. Ct. 568, 580 (2013). If the motion is granted, then

1   the case should be dismissed without prejudice to re-filing it in the relevant forum.

2         Under a traditional *forum non conveniens* analysis where there is no forum selection
3   clause, courts must evaluate both the convenience of the parties (i.e., private interest factors) as
4   well as various public interest factors. *Id.* at 581. However, where the parties' contract contains a
5   valid forum selection clause, that "clause [should be] given controlling weight in all but the most
6   exceptional cases." *Id.* at 581. Thus, the presence of a valid forum selection clause changes the
7   *forum non conveniens* analysis in three ways: (1) the plaintiff's choice of forum merits no weight;
8   (2) the court does not consider the parties' private interests and deems those factors to weigh
9   entirely in favor of the preselected forum; and (3) the agreed-upon forum need not apply the law
10  of the court where the suit was filed. *Id.* at 581-82. "As a consequence, a district court may
11  consider arguments about public-interest factors only." *Id.* at 582. "Because those factors will
12  rarely defeat a transfer motion, the practical result is that forum-selection clauses should control
13  except in unusual cases." *Id.*

14        The public interest factors courts consider include "the administrative difficulties flowing
15  from court congestion; the local interest in having localized controversies decided at home; [and]
16  the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at
17  581 n.6; *see also Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir.
18  2009) (identifying five public interest factors: "(1) local interest in the lawsuit; (2) the court's
19  familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the
20  court; and (5) the costs of resolving a dispute unrelated to a particular forum.").

21        Plaintiff has not met its heavy burden to show that this is the exceptional or unusual case
22  where public interest factors defeat a transfer motion. The parties agree that issues of burden and
23  court congestion are neutral. As for the court's familiarity with the governing law, the clause
24  provides that Massachusetts law governs this dispute. While this court is capable of applying
25  Massachusetts law, it also has no particular familiarity with it. Massachusetts courts are
26  undoubtedly more experienced in applying their own law. There is a local interest here because
27  plaintiff is a California corporation, and litigating in Massachusetts might be more expensive.
28  But, this dispute is not unrelated to a Massachusetts forum where IPG is based. And, as has been

observed by other courts in this district, "the financial cost and inconvenience of litigating the case in [another jurisdiction] . . . are the sorts of 'practical problems'---related to making 'trial of a case easy, expeditious and inexpensive'---which have been deemed private interest factors that may not be considered under *Atlantic Marine*.'" *Adema Techs., Inc. v. Wacker Chemie AG*, No. No. 13-cv-05599-BLF, 2014 WL 3615799, at *5 (N.D. Cal., July 22, 2014) (quoting *Monastiero v. appMobi, Inc.*, No. C 13–05711 SI, 2014 WL 1991564, at *5 (N.D. Cal. May 15, 2014)). More to the point, plaintiff has not identified "any special interest that brings this case into the realm of the exceptional or the unusual." *Id*. Nor is it apparent that these factors are sufficient to outweigh the strong interest in enforcing a forum selection clause in the parties' contract.

### 2. Whether enforcement of the forum selection clause would be unreasonable

As discussed above, enforcement of a forum selection clause would be unreasonable if Accler-Ray demonstrates that (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) plaintiff would effectively be deprived of its day in court were the clause enforced; or (3) enforcement would contravene a strong California public policy. *Murphy*, 362 F.3d at 1140.

Acceler-Ray argues that the forum selection clause was the product of fraud because, it contends, the entire contract was procured by fraud. But, it is not enough for plaintiff to allege that it was misled into entering a contract. "For a party to escape a forum selection clause on the grounds of fraud, it must show that the inclusion of that clause in the contract was the product of fraud or coercion." *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) (citation omitted). There has been no such showing here.

Acceler-Ray nevertheless maintains that the forum selection clause should not be enforced because it is "buried" in IPG's T&Cs and was never actually negotiated. There is no *per se* rule that non-negotiated forum selection clauses are never enforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). Moreover, this was a deal between sophisticated businesspeople, and IPG sent and Acceler-Ray received a copy of IPG's T&Cs during the parties' negotiations prior to the sale. *See, LP Digital Solutions*, 921 F. Supp.2d at 1007-08 (C.D. Cal. 2013)

9

("Contrary to plaintiff's contentions, [defendant] had no duty to notify plaintiff of the terms and conditions attached to the contract, including the forum selection clause. Upon receiving the invoice, plaintiff had a duty to read the terms and conditions contained therein, because once the parties mutually performed according to its terms, the invoice became the parties' operative contract.").

Plaintiff contends that litigating in Massachusetts will be inconvenient, but has not shown that enforcing the forum selection clause will deprive plaintiff of its day in court. While plaintiff argues that California has a strong interest in protecting consumers, it has not identified "a fundamental public policy underlying California's consumer laws with respect to venue." *Adema Techs., Inc.* 2014 WL 3615799, at *4.

Accordingly, the court does not find that this presents an "unusual case" where "public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 134 S. Ct. at 582, 583. Nor does it find a compelling reason why the forum selection clause should not be enforced.

## ORDER

Based on the foregoing, defendant's motion to dismiss is granted and plaintiff's complaint is dismissed without prejudice.

SO ORDERED.

Dated: March 31, 2017

HOWARD R. LLOYD
United States Magistrate Judge

10

5:16-cv-02352-HRL Notice has been electronically mailed to:

Edward Arthur Kraus     ekraus@svlg.com, edn@svlg.com

Jennifer S. Coleman     jcoleman@hopkinscarley.com, callen@hopkinscarley.com

John V. Picone , III    jpicone@hopkinscarley.com, dhodges@hopkinscarley.com, jcoleman@hopkinscarley.com

Kathryn E. Barrett     keb@svlg.com, amt@svlg.com, caf@svlg.com